This morning is Weaver v. United States Postal Service, and Mr. Marshall, whenever you get ready, take your time, but whenever you're ready, we'll hear from you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Jonathan Marshall from Jenner and Block for the appellant, Mr. Weaver. If I may, I'd like to reserve five minutes for rebuttal. Mr. Weaver's pro se complaint was dismissed with prejudice on the ground that it would be impossible for him to assert a timely claim under the FMLA. That judgment was plagued by a host of errors, both substantive and procedural. On the merits, the claims in the proposed amended complaint are timely because Mr. Weaver – excuse me – they are timely under the FMLA's plain text because Mr. Weaver sued within three years after his actual termination from the Postal Service, which was the last event constituting the alleged violation. The magistrate judge concluded otherwise, only by reaching for precedent that interpreted different language in different statutes. But even if Mr. Weaver were – I'd like to say that's the last event. It seems to me the standard is a little different. It seems to me that the standard is when injury has occurred such that a person would be able to sue in court. Isn't that when a cause of action accrues? Judge Niemeyer, under many statutes, that is the standard. That is a very typical formula. I know, but my question is, why isn't the last event referring to the last aspect that gives rise to a suit? The statute uses the last event word, but you're adding on – I mean, we have all kinds of last events, but we've got to read it in some kind of context, and it's a statute of limitations, and the idea is if you have an ongoing series of events that give rise to a cause of action, maybe we get into an issue – this tries to eliminate maybe the notion that you have to go on the first event. But here, the very last event, I suppose, was when he was fired in the June letter. So, we agree that, Judge Niemeyer, that you should read it in context. We think the important context here is the difference in the language of this limitations rule as compared to limitations rule in every other federal statute as far as we are aware of. And I want to focus specifically on the difference between the language in this provision and the language in the limitations rule under the Fair Labor Standards Act. Congress, when it enacted the FMLA, was clearly thinking of the limitations rule in the FL… What if in October, they gave him – he was entitled to bonuses, and they sent him his bonus check, his final bonus check in October? That's an event, too, related to his thing. And then in December, they gave him a – or in January, they gave him a tax return, W-2. That's an event related to his employment. And I guess your argument is basically we need to construe the statutory language, but it's a little strange for us to be wandering away from the time when the man could first or could sue. So, Judge Niemeyer, to answer your hypothetical, we don't think that those events you mentioned would restart the clock here. It's not just any event related. I was assuming that when I asked the question that you would agree on that one. So I was just pointing out that we could construe last event absurdly at some point. So I think the FLSA comparison is very instructive in addressing your point, Judge Niemeyer. The FLSA has an accrual rule for triggering the limitations clock. It also, just like the FMLA, has a two-tiered limitations provision where it's two years generally and then three years for a willful violation. Congress copied that substance of the limitations provision when it enacted the FMLA in 1993, but it conspicuously did not take the language of the FLSA, which would have clearly had the accrual rule that Your Honor mentioned. Instead, Congress chose a much broader language, probably in recognition of the fact that the types of disputes that give rise to FMLA suits sometimes involve large gaps between the violation and the actual effect of the violation. That's true, but that actually hurt you in this case because this case has two components, as I understand it. One is the actual violations of the FMLA for particular leaves, and when a man's denied the benefits with respect to a particular leave, it seems to me each one gives rise to a claim. But then you have an overall claim for retaliation, and the retaliation, the harm there was being fired, and it seems to me that's a straightforward retaliation claim that ends when the company, here the Postal Service, retaliated and fired him. We agree that that claim, that that violation proves, excuse me, that the last event constituting that violation is when Mr. Weaver was actually terminated. The date... Terminated in June. You are thereby terminated effective September 23rd. And so the question is whether there is anything more to do at that point. I mean, he received a final termination letter. So one of the procedural issues that we have with what transpired below Judge Niemeyer is that it's not totally clear that what he received in June of 2016 was indeed a a notice of an official personnel action such that it would be akin to the notice at issue in the Supreme Court's Rick's case. As Mr. Weaver argued below, under Postal Service regulations, there are certain procedures that must be followed when terminating an employee. Mr. Weaver believed that those procedures weren't followed here, which is why he argued before the, excuse me, before the district court. He was basically terminated for not showing up for work. Well, that is what they said. That's what the... He kept... There were lots and lots of times he just didn't show up for work. And that's why they terminated him, they said. That is the Postal Service's version of events. And of course... You can dispute that. Of course. And we think, you know, the Postal Service, as to the merits of whether they're actually, the firing actually was retaliatory, that is something the Postal Service can develop in discovery and ultimately can be resolved at summary judgment. Critical to this is what is the evidence that we consider here? And what was part of the complaint? There were two letters. One was on June 3rd, the other one on September 23rd. It does appear June 3rd letter should have been considered by the court, but there seems to be problems with the September 23rd letter because it's not mentioned in the complaint. Only says that the union is withdrawing. So without that letter on September 23rd, why is your best argument, at least on the merits, such that the court had to make an inference as to why that gap existed there, that the evidence had not developed? Because this is a motion to dismiss. We've not gotten to the summary judgment. Granted, you may not last very long on summary judgment because probably this letter does come in. But so why is that not the direction, at least in terms of where this case should be going? Well, we think that's exactly right, Judge Winn. The reason that evidence doesn't generally get considered, extrinsic evidence. That you contend that September 23rd letter should not come in because it was not mentioned in the complaint. And without that letter, that gap cannot be explained. I'm sorry, Judge Winn, I didn't. The gap cannot be explained without the September 23rd letter, which should not have been considered by the court. We don't think that either letter should have been considered, Judge Winn. I understand that, but I'm just dealing with the September 23rd letter. So we think the September 23rd letter helps us in establishing a genuine factual dispute as to what was going on between June and September. So Mr. Weaver's position is that the June 2016 letter, even if it were to be considered by the district court, and we don't think it should have come in at all. Another question, preliminarily, because you didn't start with this. Last week you sent us a 28-J letter and you told us to look at Elijah's decision. If we do that, you seem to be asking us to simply vacate and remand this thing without even getting to the merits because the district court needs to follow Elijah and do a de novo review. That is correct, Judge Winn. Why is that? I mean, you threw that out there, but you didn't start with that. You launched it to the merits, and it seems to me Elijah is clearly in front of us. We agree. We agree completely with that, Judge Winn. We think that the most straightforward path for this court, and in fact, the path that is required under this court's precedence, is not to reach the merits, simply to remand on the basis that the district court was required to undertake de novo review in this case and did not. Mr. Weaver, after the magistrate judge issued the... Is this on point with Elijah? I think it is exactly on point. So in Elijah, I believe it was a prisoner in that case, but it was a, say, habeas petitioner, filed a petition. The magistrate judge recommended that it be dismissed in an R&R. The district court refused in Elijah to give de novo review to the magistrate judge's R&R, despite the fact that the petitioner in that case raised his merits arguments before the district court in his objections. The district court in Elijah had declined to give de novo review because it believed that since the petitioner had merely rehashed the arguments he made before the magistrate judge in his objections, that wasn't a sufficiently specific objection to trigger de novo review. And this court said that that was wrong, that the district court there had applied the wrong standard. And in fact, when a litigant does nothing more than rehash the exact arguments he made before the magistrate judge in his objections, that is absolutely sufficiently specific to trigger de novo review, even in a counsel case. Like this case, Elijah involved a pro se plaintiff. This court said that the usually low threshold to trigger de novo review is even lower in the case of a pro se plaintiff. And in fact, in footnote four of the Elijah decision, this court gave a long string site of examples of district court orders that had wrongly applied the standard for what constitutes a specific objection. And one of the examples this court gave is the district court's order in this very case. In that sense, you have already decided that the district court did not apply the correct standard here. And I think that's also very clear if you look at the district court's order. And this is at page 80 of the joint appendix. The district court cites a number of old cases and district court cases citing this caching standard of what is insufficient that this court in Elijah has made very, very clear is not the correct standard. The government doesn't defend the conclusion that Mr. Weber's objections were insufficiently specific. Instead, what the government seems to do here, and this is at pages 12 to 13 of the red brief, is argue that the district court, in fact, did undertake de novo review at page 12 of the government's brief. It states that the district court here said it was reviewing de novo the aspects of the R&R to which Mr. Weber had specifically objected. But that is flatly incorrect, your honors. If you look at page 79 of the joint appendix, which is what the government cites there, that is simply the recitation, the boilerplate recitation of the standard in which the district court says normally the way review of R&Rs works, to the extent there are specific objections, I review de novo. Otherwise, I review for clear error. If you look at page 81 of the joint appendix, when the district court applies this standard, it makes absolutely clear, we don't think there's really any ambiguity whatsoever, that the district court found Mr. Weber's objections to be insufficiently specific and therefore reviewed only for clear error. The question, as you alluded to at the beginning, Judge Winn, is what is the remedy when a district court has failed to undertake the required de novo review? And as this court stated in Elijah and also in some earlier cases, for instance, the United States v. De Leon Ramirez case, the proper approach in that circumstance is not to reach the merits, it's to simply demand to the district court to have the proper de novo review. This court explained that the constitutionality of the magistrate-judge review scheme depends on the notion that the district court is going to give de novo review when there are objections. And that by simply remanding without reaching the merits, you vindicate those Article III interests weren't respected, at the same time preserving everything as it was for any future appeal. The district court... I'm suggesting the district court went a little further than you give the court credit for, but the court basically took the position that your client didn't challenge the limitations issue. You can read the district court order as saying that. In Elijah, this court clarified that whether an objection is sufficiently specific is an issue this court reviews de novo. So I think what is important for this court's purposes is to look at the objections themselves and decide whether it cleared the very low standard for a pro se plaintiff. We think it... You know, procedures are important and there's a little murkiness in this case, so no question that we have to resolve. But we have this letter that comes before the court in the record, referred to in the complaint, the June 3rd letter. And I'd like to just... The letter states, you are hereby notified that you will be removed from the Postal Service effective at the end of your tour of duty on July 5, 2016. So that is a categorical statement that as of July 5, that person will no longer be a member of the Postal Service. That hasn't been rebutted. The only rebuttal you come in later with is Rick's idea that you had a grievance with the union and the union chose not to get involved. But the question here is, when could you have sued under the limitations language that we were talking about earlier? And the district judge basically said that was not challenging and didn't address it. Now, that doesn't excuse the district judge from getting a standard wrong. But on that particular issue, I guess what I'm trying to take up a little bit is what Judge Wynn said, is where is this going? Are we going to send everybody around through all the hoops and things and say, do it better, only to be faced with this undisputed letter that was sent to your client more than three years before he filed suit? So I'm well past my time. Yeah, I'm happy for your ideas. So on the July 5th date that you're discussing, Judge Niemeyer, first, we think there is a genuine dispute of fact about whether July 5th was actually the date of termination. It is true that- Actually, I think the date of termination was July 3. I mean, but you are hereby notified that you're removing the Postal Service. And if the RICS framework governs, that would be the relevant date. There's a dispute as to whether July was the actual end of Mr. Weaver's employment. Is that important? So I don't think it's important. The government doesn't seem to think it's important. In the government's brief, they disclaim reliance on July 5th, say that's an irrelevant date. And the only issue for this court is whether the limitations period started in June, when Mr. Weaver was purportedly notified of the termination, or in September, when, as the All right. Thank you. Thank you, Your Honors. All right. Mr. Weaver. Good afternoon, Your Honors. If it pleases the court, Michael Weaver for the United States Postal Service. My friend has raised quite a few procedural issues on this appeal, and I do intend to address those. This is a case that ultimately comes down to one question, which is when the statute of limitations on an FMLA claim begins to run. I agree with you. I think we can get into merits, but if we agree with the 28-J letter on Elijah, we don't even get there. We send this back, vacate it, man, just like we did in Elijah, and say, go back, do a de novo review. Why is that not a threshold thing we deal with, rather than just launch into it? I don't see we don't, but it seems like to me that ought to be addressed right up front, because there's a lot of parallels between Elijah and this case. Your Honor, certainly I'm happy to address it. I have two answers to your question. The first is that Elijah says that generally you will not reach the merits if you find that the de novo review threshold hasn't been met. I think this case would fall under an exception on that, where the parties appear to agree on the relevant facts, and the question is simply what legal standard applies. Additionally, however, I disagree with my friend that Elijah is on point for one reason, which is that the district court certainly used the word rehash in its opinion, and I don't think there's a question that if Elijah had been decided before it issued its opinion, it wouldn't have said rehash in the opinion. But its decision, citing Orpiano and saying that it was not obligated to provide de novo review is still correct, because Orpiano creates an exception for de novo review, stating that de novo review is not necessary for objections that deal with legal issues as opposed to factual issues, and in this case, Weaver's three objections are all legal. One is whether the magistrate judge was wrong in denying his motion to amend because he didn't understand he could have objected to it. One is, essentially, does Ricks apply, and the other is, should the magistrate have sua sponte been required to consider equitable tolling? Those are all legal issues, and the judge doesn't have to go deep into the record de novo to review that and see if those are correct. They can look at the legal question, the judge can look at the legal question, make a decision about whether that case was correct, and that's what the judge here did, is they found that they agreed with the magistrate judge that Ricks applied, and because Ricks applies, the plaintiff loses. Therefore, under Orpiano, de novo review isn't required. Elijah doesn't state that it's overturning Orpiano, and of course, as a panel opinion, it couldn't overturn Orpiano. As far as I can tell, the Orpiano objection wasn't discussed or briefed at all in Elijah. And of course, since we haven't had the opportunity to fully brief this, if you do think that this issue would come down to this, I think we should have an opportunity to brief and respond to the 28J letter. Turning to the merits, while it is true the FMLA uses the word event, it has to be read in the context of the full language, which is the last event constituting the alleged violation for which such action is brought, and constituting the violation is a clear part of the sentence there, which means that once the violation has been constituted, once the violation has happened, you don't have to include subsequent events that happen. As my friend admits, if in January it affected his tax returns, that's an event, but he admits that wouldn't have been included. And here, the violation is constituted at the point when it is ripe and Mr. Weaver is able to sue, the violation has happened. I think Ricks makes it very clear that that happens at the time the employee is terminated, even if that termination doesn't take place until later. This case actually is very factually similar to Ricks in that both concern employment decisions that were made and communicated to the employee, and then time passed, and then the employee filed a union grievance, which temporarily delayed things, the union grievance was resolved, and then employment terminated. And the Ricks court explained very clearly that the union grievance procedure isn't part of a violation. It's a remedial option that happens after the violation, and you can't factor that in when considering the statute of limitations starting to run. They even specifically addressed whether a union grievance should toll statute of limitations and found that it should not. The Barrett court in the Seventh Circuit is, as far as I can tell, the only case that discusses this issue in detail. They don't decide specifically whether Ricks should apply, but they say that if anything, the event standard is more strict rather than less because it's going to start running when the final event constituting the violation happens, not when any later consequence happens. So you have language in Title VII and under the FMLA about statute of limitations. They're somewhat different. What explains that difference? Your Honor, I agree with the Barrett court that the event language is actually more strict rather than less strict because if you're simply talking about acts, you might be concerned about acts that continue happening, whereas the event that constitutes the violation means that you're looking at the broad range of events that are the violation. But once there is a constituted violation that can be sued for, then it's constituted at that time. As the Barrett court explained, that was a case where if a person had, I believe, 12 absences, they would be terminated. And the court explained that due to the event language, and they also held that they would have also lost under Ricks, but due to the event language, the event that constituted the cause of action was the denial of leave. It wasn't the termination, which was undoubtedly an action by the employer, but it was a mechanical action taking place because they had that number of absences and that action was not a violation. If anything, I think that the FMLA standard reflects what's in Ricks, which is that what matters is the event that constitutes the violation, not inevitable consequences that can follow later from that. And in this case, while my friend says that the letter is ambiguous in some way and there's a factual dispute about whether Weaver was terminated, that isn't the case. The letter is explicit. Weaver will be terminated. He's instructed in that letter to return his Postal Service property. It's true the letter provides information about him. I'm talking about the June termination letter. So it says he will be terminated July 5th? That's correct. And well, but how do you explain that gap between the letter that says he will be terminated and when he actually was terminated on September 23rd? You see where that goes. Will be is not you are effectively terminated on July the 5th. That's a pretty definite time period. You can do whatever you want to after that, but this letter is terminating you effectively on that. This is will be terminated. And if a company chooses, as they would have done in this instance, he could have stayed on for years. And there's no explanation as to why that's occurring here. But you've got this gap between July the 5th and September 23rd, and which appears to me the only way the district court can do that is to infer that this letter was he was indicating at least the September 23rd one that he was removed because the union petition was withdrawn that the labor grievance had held up his removal. And while that sounds reasonable, I don't. It doesn't appear to be supported on the 26th for something that's a legend complaint or sent forth in the pleadings. Your Honor, my answer to that is that I agree with you that that is what factually happened is that the union was doing grievance and he was terminated. I don't actually think whether that is in the clear in the record matters to your resolution of this case, because under Rick's what matters is the date the employer makes the termination decision and communicates that to the employee, not the date his termination happens, but we're drawing, at least we're getting that little fine line. If the letter says effective July 25th, you are terminated. That's notice you got, but it says will be. That means something is going to happen that's going to terminate you will be or something you are terminated on that date. But the day comes and you're not. And it may well be he was, but there's a reason he's now being held over. He may be terminated, but he's now being held over. And I don't dispute there's probably some reason, but there's nothing in the complaint or the record, the pleadings to support why. And if you don't get a why as to why it went for there, you left with this point. He wasn't really terminated until this later date when he actually was terminated. Your Honor, in response to that, I think what matters is that the Postal Service's letter was a definite decision to terminate him. In this case, will be referred to any kind of we're still thinking about it or it's indefinite. It simply means that it's in the future. Do agree will be terminated is significantly different than effective on this date. You are terminated or you are terminated effective July 5th. You don't have to do anything else. You go on July 25th, but will be tells you something is going to happen. Maybe on July 5th, someone's going to walk in your door, says, right, you're going to be terminated that you're terminated right now. Or here's what you got. But you just let him sit there and it goes to September 23rd. But to follow this logically where you're going, he could have stayed years. And you would have said you were effectively determined you were terminated on July 5th because you will be, but we never did. And I'm not saying he wasn't and he could say for years, but you'd have to explain the gap. Why is that gap between the 5th and the September 23rd? And there's nothing in the record that explains the gap. I'm not saying it wouldn't come out in some judgment, but it's not here on 26. Well, yeah, it was on his motion for reconsideration. I think he introduced the September letter. So that's right. But I actually think that that cuts in our. I mean, through the motion of reconsideration, I mean, the statement, the initial statement is still there. It's not in the record. That's what I'm saying. Not motion reconsideration. I'm talking about on the 26th. What's before the court there? I'm agreeing with you, Your Honor. Right. But I actually think that that cuts in our favor. Because remember, during this time period where the union grievance is happening and Weaver has been told to turn over his property but hasn't been terminated, he's not working and he's not getting paid. So if you were to say, well, this action isn't right until he's fine. No, Your Honor, I don't believe his pay status is in the. I'm going with you. You made a good summary. That's a good argument. I could go with you. But all that's good evidence. But it's something that the court's got to infer and procedural rule or not. You know, we burn people all the time on procedural rules. And one of my pet peeves is we're going to do everybody the same, no matter what the case is, what the facts are. And procedural rules are followed on this court. Sometimes, in my opinion, it really brings about some, I think, unjust results. But we're bound and we do it by the procedural rules. This is not so. This is not so out there that it's not in front of you right now. We're on 12 v. 6. We only look at certain things on 12 v. 6. What you've given me is not what you'd be looking at. Do you disagree with that? I don't disagree. I'm just trying to answer your questions about what's happening in that period. I'm answering what is actually there and why that gap that exists from July the 23rd. And where is the district court getting this from? Because you have to infer it. And I don't know if that's a proper inference on a 12 v. 6. My answer, Your Honor, is that it doesn't matter what happens between. Because under Ricks, what is actionable is the June letter, regardless of what happens later. For example, Mr. Weaver could have won his union grievance and been reinstated. But that doesn't mean that he didn't receive the notice of termination. The notice of termination communicated to him, representing the Postal Service's decision to terminate, creates the cause of action, and the statute of limitations starts to run then. Of course, the Postal Service could change their mind a week later and say, actually, we want to rehire you. But that doesn't mean it didn't violate the FMLA the prior week. It just means they changed their mind later and did something different. So the fact that in the record, you can't necessarily tell what happened after this doesn't affect the termination at all. Because he still received the letter, that still triggered the statute of limitations, because it was the Postal Service's final decision. Whether the Postal Service then reconsidered or didn't reconsider, or whether he filed a union grievance or whether he didn't, none of that actually matters to the fact that on the day he received the letter, he had a cause of action. And that's when the statute of limitations started. For your purposes, termination occurs when you send a letter that says, we'll be terminated. But if the person never leaves it, he stays there another 10 years, effectively, he was terminated on that date. And everything else that happened may have been a rehire or something, but he was terminated then. And at least if you're going to look at it from that legal point, the reason he stays on, he's sort of rehired. I suppose that would be correct, Your Honor, or maybe they changed their mind in the union grievance process. It could be a variety of- But you know, the June letter doesn't mention the grievance process. It just gives him advice that he has it. It doesn't have any dates on that. The date of the June letter, the end of the employment is July 5th. Yes. Which is also beyond limitations. In other words, it's a June 3 letter, and it says it's effective July 5, which is one month later, and tells him at that point in time on June 3rd, he can file a grievance. Yes, Your Honor, that's correct. We believe that the date that applies under RICS is the date he received the letter, not the July date. But the July date is what's provided in the letter for termination, not the September date that happens later. We explain in our motion that the September date was due to a union grievance, but I'll admit that doesn't appear to actually be in the documents we attached to that motion, so I don't think that's properly before you. But it is the case that the June letter terminates him, and as of July, the statute of limitations starts as of when he receives the letter, not on his final day. And in fact, the letter of termination on June 3rd, Your Honor. And in fact, some of the cases that my friend has cited in support of him actually support us on this. For example, in Green v. Brennan, it actually says that this is the case where an employee resigned due to constructive discharge, and he includes a quote from that about the termination is the date when it begins. But the court also says in that case that the termination date is when the employee gives notice, not on their last day. So they could give two weeks' notice. My point earlier on is, again, it doesn't make any difference in this case, because whether it's June 3rd or July 5th, July 5th would be the last date because it says effective July 5th. But both of those dates are well beyond the limitation in this case. Yes, Your Honor, that's correct. Only thing that occurred on September is that the union withdrew representation. That is true, Your Honor. As we did acknowledge in our briefing, as a formal matter, the Postal Service processes some of the final termination paperwork after the union grievance is resolved. So that happened on the Postal Service's part, but that's purely mechanical. It's not a decision made by the Postal Service. That's just what automatically happens when a union grievance is withdrawn. You get there if you reach the conclusion that between the two letters, the initial letter was actually terminated, or that they notice the termination. But if, in fact, these are letters that are indicating you're going to be terminated, or you will be terminated, and, in fact, you're not until the 23rd, it indicates there are some, the district court seems to rely upon these grievances there that's in the record. What we don't have is that explanation. Yeah, if it's just the first letter, the second letter, then you deal with July 5th, and that's the end of it. But you don't have it, and it's not as equivocal as it seems. There's a will be terminated. You don't know if you're going to be terminated, but you will be. And when it comes about, if you are not, in fact, terminated, I mean, the whole aspect of you could be there 10 more years, it's not absurd because you're there until the 23rd with no explanation. Nothing you can figure out why that's happening in here. We only talk about this because of statute of limitations anyway. Of course, we're trying to move it. Pro se, individuals tend to find themselves in this more often than lawyers, thank God. But nonetheless, it does happen. So that's kind of the split we're making here. If you're going to rely on those first two letters and say, okay, that's notice and bricks, we're out. I mean, Judge Niebuhr is absolutely correct on that. If that's what you're going to do. But in my view, there's something more with these letters. You can't just blindly look at these letters and say, will be terminated. And it's not until the 23rd. And then you've got these grievances that the district court points to, at least makes allude to. But you've got to infer that in order to get there. You can't infer it because there's nothing in the complaint that supports it under 12B-6. So that's kind of where we are. Your Honor, I disagree in that I don't believe that will be is less definite than you are terminated effective on this date. It's merely expressing that the date is in the future. I'm not sure about two letters being referred to. But the one letter that's in this record says you will be effective July 5th. It says you are hereby provided notice that you will be effective July 5th. That's what it says. Yes, Your Honor. And that does represent the final. My time is up, but that is the final decision on the Postal Service. Thank you. Okay, thank you, Mr. Marshall. Thank you, Your Honor. Just a few brief points. First, on the magistrate judge district court de novo review issue, my friend said that the Elijah rule is subject to exceptions that sometimes this court will reach the merits, at least in practice. And this is in Elijah. Case is cited in Elijah. And as far as I know, this is the practice in all circuits. When the district court fails to undertake the required de novo review, the practice is to amend without reaching the merit. My friend asked for an opportunity to brief this issue further. With respect, we raised this argument conspicuously in our blue brief. The government did not respond to it in our red brief. The government did not file a Rule 28J letter, and we don't think there's any need to give the government further opportunity to respond. Judge Wynne, you had a quite lengthy colloquy with my friend about the facts here. What is the meaning of all the dates? We sometimes do that on the Fourth Circuit. I think the infusion about what exactly happened, what is the relevance of this letter and that letter, and what was going on behind the scenes, that is exactly what animates the usual rule in Rule 12D that matters outside the pleading do not get considered on a Rule 12B6 motion. Now, there is a narrow exception when a plaintiff has so wholeheartedly embraced a document in framing his complaint that he can be considered to have effectively incorporated that document by reference. That is not the case with either letter at issue in this case. The proposed amended complaint does not mention a June 2016 letter. It does not mention a union grievance process or a September 2023 letter. The only thing it mentions is that Mr. Weaver was terminated in September of 2023. Judge Niemeyer, you were asking my friend and you were asking me earlier about July 5th. We think there is a genuine dispute based on materials in the record about whether July 5th is a relevant date. I would acknowledge, Judge Niemeyer, that if we go through discovery and it turns out that my friend is correct, that July 5th actually was Mr. Weaver's last day as an employee of the Postal Service, his claims in this case would be untimely. But we don't know. Mr. Weaver stated... Does he allege he worked after July 5th? It says, turn in all your keys and stuff, and it also advises you that you have a grievance procedure with the union available? He doesn't know. It seems to me that letter just sort of ended things. He doesn't allege that he worked afterwards, did he? Well, he doesn't allege anything about the June letter. Judge Niemeyer, actually, I think he does allege that he works through September 23rd, 2016. That is what the proposed amended complaint says, that he was terminated on September 23rd, 2016. I think in his filings, his pro se filings below, Mr. Weaver was fairly clear throughout. It says that, but it also is clear that it says that because the union said, we're not going to represent you on this. So I don't think that's super clear on the record, Judge Niemeyer. The government has represented throughout that the only relevance of September 23rd is the union grievance process. That is not Mr. Weaver's position. He has never acknowledged that. And in the end, all we're asking for is a chance to go back and sort this out. If it turns out that July was the end of his employment, then that will be a bad fact for Mr. Weaver on slurry judgment. On the merits, my friend, I don't think was able to respond to the question of why Congress used this unique language in the FMLA. He suggested that maybe this is even a stricter limitations rule. It's stricter because what it basically says, I think this is his argument, it's the last event that gives rise to a cause of action, the last element stating the cause of action. And that may be much earlier than the last event in the whole scenario. In other words, the last event creating the cause of action could be earlier. I think that's his point. I think that's right, Judge Niemeyer. Of course, if Congress wanted to accomplish that in the FMLA, it had the Title VII language that would have gotten just that result based on the Supreme Court's taxation. The event word is the event giving rise to a cause of action is special to this statute, and that is perhaps narrower. That's his argument. In other words, it's more strict. The cause of action will arise sooner. Well, I don't know how the cause of action can arise any earlier than an accrual date. I don't take my friend to suggest that it can. And if Congress wanted an accrual date, it could have used the language it had before. I think the language, the argument, the language addresses where there are multiple events giving rise to the cause of action, and that it's the first event, the last event that creates a cause of action. So that if you have four causes of action, you're going to have to file within three years or two years after the first time you have a cause of action. Well, that may or may not be relevant in this case, but it's a curiosity, that language. Thank you, Your Honor. We ask that this court reverse and remand in this case. All right. We'll come down and take a short recess.
judges: Paul V. Niemeyer, James Andrew Wynn, William B. Traxler Jr.